■ JOSEPH FEDELE, Appellant-Respondent, v HAROLD SEYBERT et al., Respondents-Appellants. [673 NYS2d 421] —Order, Supreme Court, New York County (Herman Cahn, J.), entered February 21, 1997, which, *inter alia*, granted defendants' cross motion solely to the extent of staying plaintiff's seventh cause of action for dissolution, directing plaintiff to amend the complaint to comply with Business Corporation Law §§ 1105 and 1106, and further directing the parties to attempt to negotiate the fair value of plaintiff's shares with the aid of a mediator, unanimously modified, on the law, the facts and in the exercise of discretion, to the extent of vacating the directions to amend the complaint and to negotiate the fair value of plaintiff's shares, and the matter is remanded for further proceedings on plaintiff's first through sixth causes of action, and otherwise affirmed, without costs.

Plaintiff Joseph Fedele is the owner of real property located at West 125th Street and 12th Avenue in Manhattan. Defendants Harold Seybert, David Sneddon and Howard Glickberg (collectively defendants) are the owners of a food market located at West 75th Street and Broadway, known as Fairway Operating Corp. (75th Street Fairway). In April 1995, plaintiff and the defendants formed a close corporation known as Fairway Wholesale & Distribution Co., Inc. (Uptown Fairway). The new corporation was created to operate a food market on the 125th Street property owned by plaintiff. Under the shareholders' agreement, plaintiff was a 40% shareholder and was given the titles of president and general manager. Plaintiff was responsible for the day-to-day management of the corporation. The three defendants were each made 20% shareholders, and were named vice-presidents (Seybert and Sneddon) or secretary (Glickberg).

Uptown Fairway opened in December 1995 and by all accounts has been a successful financial venture. Nonetheless, the parties soon became embroiled in an ongoing dispute over the management and control of Uptown Fairway. Plaintiff alleges that the defendants improperly diverted thousands of dollars of merchandise from Uptown Fairway to 75th Street Fairway and to another entity owned by defendants, without compensation; diverted business opportunities such as catering and manufacturer's rebates in a similar manner; and concealed financial information and created phony invoices in order to cover up their wrongdoing. Plaintiff further alleges that defendants violated the shareholders' agreement by attempting

to amend the by-laws to divest him of his management responsibilities, by executing secret, unauthorized promissory notes obligating the corporation, by writing checks drawn on Uptown Fairway's account and by hiring an employee whose salary was in excess of $50,000 without his consent.

Plaintiff's amended complaint alleges seven causes of action. Plaintiff seeks damages for breach of fiduciary duty, misappropriation and conversion of corporate assets and breach of contract. He also seeks equitable relief in the form of a declaration that he is president and general manager of Uptown Fairway, the imposition of a constructive trust on the diverted assets, an accounting and corporate dissolution.

It is the seventh cause of action for dissolution that is the focus of this appeal. Plaintiff alleges that the defendants "have engaged in a pattern of illegal, unfair and oppressive conduct severely prejudicing Fedele and Uptown Fairway." It is further alleged that defendants "looted the corporation and impaired its capital for their own benefit" and flouted the provisions of the shareholders' agreement to exploit the corporation for their own enrichment. Plaintiff requests "judicial dissolution" of Uptown Fairway. Plaintiff never identified a section of the Business Corporation Law as a basis for dissolution, as that law requires (Business Corporation Law § 1105), and there was no compliance with the Business Corporation Law's procedures for a dissolution petition (Business Corporation Law § 1106).

Plaintiff simultaneously moved for a temporary restraining order and preliminary injunction to enjoin the alleged misconduct by defendants, and to prevent defendants from interfering with his exercise of his management duties over Uptown Fairway. In response, defendants provided plaintiff with notice of their election to purchase his shares pursuant to Business Corporation Law § 1118 (a), and cross-moved for an order pursuant to Business Corporation Law § 1118 (b) staying the proceedings pending a determination of the fair value of plaintiff's shares. In response to the cross motion, plaintiff argued that he was requesting dissolution only as an alternative to the primary relief requested in his first six causes of action. He further asserted that it was premature to consider any buy-out remedy because he had never filed a proper dissolution petition, and there had been no negotiations over the value of plaintiff's shares pursuant to Business Corporation Law § 1118 (b).

The motion court granted a "limited" preliminary injunction, concluding that plaintiff had satisfied the prerequisites for

such relief, including a likelihood of success on the merits.* However, the court also granted the cross motion to the extent of staying the seventh cause of action for dissolution, and directing plaintiff to amend his pleadings to conform to the statutory requirements, nunc pro tunc, for a petition for judicial dissolution (Business Corporation Law §§ 1105, 1106). The court ruled that plaintiff had, in effect, pleaded a cause of action for statutory dissolution under Business Corporation Law § 1104-a (a), that said cause of action was not pleaded in the alternative and that plaintiff could not withdraw that cause of action in order to defeat defendants' election to buy out plaintiff's shares under section 1118 (a). It further stated that the buy-out remedy would accommodate the interests of all the parties while simultaneously ensuring the smooth running of Uptown Fairway.

On appeal, plaintiff claims that the motion court improperly converted his cause of action for common-law dissolution into a cause of action for statutory dissolution, and, in doing so, afforded the defendants a buy-out remedy to which they were not entitled. While not accepting all of plaintiff's arguments, we agree that the IAS Court should not have deemed the allegations in plaintiff's complaint as stating a cause of action under Business Corporation Law § 1104-a (a) over his objection.

Prior to the enactment of Business Corporation Law § 1104-a, minority shareholders possessed standing to seek dissolution of a corporation only where the controlling shareholders engaged in certain egregious conduct, such as where "the directors and majority shareholders 'have so palpably breached the fiduciary duty they owe to the minority shareholders'" (*Leibert v Clapp*, 13 NY2d 313, 317 quoting Hoffman, *New Horizons for the Close Corporation,* 28 Brook L Rev 1, 14; *see also, Matter of Kemp & Beatley,* 64 NY2d 63, 69-70; *Matter of Dubonnet Scarfs [Arkwright Mfg.],* 105 AD2d 339).

This common-law right of dissolution of minority shareholders was supplemented by the Legislature in 1979, when it enacted Business Corporation Law § 1104-a (L 1979, ch 217, § 1), which provided the holders of 20% or more of the outstanding shares of a close corporation with the right to petition for judicial dissolution under certain "special circumstances" (Business Corporation Law § 1104-a [a]). The specified circumstances are (1) where the directors or those in control of the corporation have been guilty of illegal, fraudulent or oppres-

---

* Defendants filed a notice of appeal from this portion of the court's ruling but have not perfected that appeal.

sive actions toward the complaining shareholders; or (2) where the property or assets of the corporation are being looted, wasted or diverted for non-corporate purposes by the controlling faction (Business Corporation Law § 1104-a [a] [1], [2]). Before dissolution is ordered on either of these grounds, a court is required to consider whether liquidation of the corporation is the only feasible means whereby petitioning shareholders may obtain a fair return on their investment, and whether it is reasonably necessary to protect the rights and interests of a substantial number of shareholders (Business Corporation Law § 1104-a [b] [1], [2]).

Simultaneously, the Legislature enacted Business Corporation Law § 1118 as a "defensive mechanism" for the non-petitioning shareholders (*Matter of Pace Photographers [Rosen]*, 71 NY2d 737, 744). Section 1118 (a) provides the non-petitioning shareholders with "an absolute right to avoid the dissolution proceedings and any possibility of the company's liquidation by electing to purchase petitioner's shares at their fair value and upon terms and conditions approved by the court" (*Matter of Pace Photographers [Rosen]*, supra, at 744-745). Significantly, the statute provides that the non-petitioning shareholders' right of election exists "[i]n any proceeding brought pursuant to section [1104-a]." (Business Corporation Law § 1118 [a].)

It cannot be disputed, therefore, that the non-petitioner's right of election to purchase the petitioner's shares "unambiguously applies whenever a petition is filed alleging grounds specified in section 1104-a" (*Matter of Cristo Bros.*, 97 AD2d 274, 276, *affd* 64 NY2d 975). However, the plaintiff herein asserts that he never filed a petition seeking dissolution under Business Corporation Law § 1104-a, citing the absence of any statutory citation in his complaint. Rather, he claims he was seeking common-law dissolution of the corporation. Defendants respond that the allegations in plaintiff's dissolution cause of action, insofar as they allege oppressive actions and looting by the majority, track the statutory language in Business Corporation Law § 1104-a (a). Thus, they assert, the IAS Court was well within its discretion in deeming plaintiff's allegations as constituting the assertion of a cause of action under Business Corporation Law § 1104-a (a).

We find plaintiff's arguments more persuasive. Although it is true, as defendants argue, that plaintiff never used the phrase "common-law dissolution" in the proceedings before the IAS Court, the fact remains that his pleadings never cited section 1104-a, nor any other Business Corporation Law provision as a

basis for dissolution. Moreover, in his papers in opposition to defendants' cross motion for a valuation of plaintiff's shares, one of plaintiff's point headings was titled "Plaintiff Did Not Commence Dissolution Proceedings Under the BCL." Explicitly or implicitly, this statement supports plaintiff's claim that he was seeking common-law, not statutory, dissolution.

The IAS Court relied on *Matter of Public Relations Aids* (109 AD2d 502) in holding that plaintiff should not be permitted to withdraw his cause of action for statutory dissolution in order to defeat defendants' right of election. Such conclusion, however, begs the question of whether such a cause of action was asserted in the first place. In *Matter of Public Relations Aids (supra)* and *Matter of Musilli (Wiltonio Rest. Corp.)* (134 AD2d 15), it was held that the petitioners in those cases were prohibited from withdrawing their causes of action for dissolution under Business Corporation Law § 1104-a in order to defeat the other shareholders' right of election since those petitioners had unequivocally asserted a section 1104-a cause of action in a proper petition. In contrast, the plaintiff herein pleaded a general cause of action for dissolution, not in petition form, in language consistent with both common-law and section 1104-a grounds. Moreover, unlike *Matter of Public Relations Aids (supra)*, there is no evidence here that plaintiff was using the dissolution proceedings as a coercive tool to obtain a higher price for his shares.

Perhaps most significantly, plaintiff made his position eminently clear in the proceedings below that he did not desire that the corporation be dissolved, and was requesting dissolution only as a last resort. We believe the court acted precipitously in deeming plaintiff's dissolution allegations a section 1104-a cause of action. Since under the Business Corporation Law the petitioner has the exclusive authority to choose the statutory basis for dissolution (Business Corporation Law § 1105), a court may not convert, over a petitioner's objection, a dissolution petition that does not afford a buy-out option for non-petitioning shareholders (*see*, Business Corporation Law § 1104), to a section 1104-a petition that triggers such a remedy (*see*, *Matter of Toscano v Southampton Brick & Tile*, 233 AD2d 515; *Matter of Giordano v Stark*, 229 AD2d 493, 494). In our view, the court's conversion of a generically pleaded cause of action for dissolution, not in petition form, to a section 1104-a petition, is at odds with these principles.

To permit the forced buy out of plaintiff's shares under these circumstances would offend rather than advance the goals underlying both section 1104-a and section 1118. It is undeni-

able that the non-petitioners' right of election provided by section 1118 (a) was intended to provide those shareholders with a method of preserving the corporation, and staving off dissolution requested by a minority shareholder. That purpose is not furthered in this case where the plaintiff has made clear he does not want to dissolve the corporation, and requests that relief only alternatively. While it is true that the dissolution cause of action was not pleaded alternatively in the complaint, an amendment of the pleadings to that effect could easily have been achieved (Business Corporation Law § 1107). Indeed, it appears to us that such an amendment would have been far simpler than the complete transformation of plaintiff's complaint into a statutory dissolution petition against his will (*cf.*, *La Sorsa v Algen Press Corp.*, 105 AD2d 771).

While dissolution may eventually become necessary, at this juncture, we conclude that the court improvidently exercised its discretion in finding that plaintiff had pleaded a section 1104-a cause of action, directing him to amend his complaint into proper petition form, and directing the parties to negotiate the fair value of plaintiff's shares pursuant to section 1118 (b). Concur—Nardelli, J. P., Williams, Mazzarelli and Andrias, JJ.

